Before we turn to the main calendar today, we have two motions that are set for argument in addition to those that we're taking on submission. The first of these is Goldman Sachs v. Christina Oster Chen, I think. Yes, Your Honor. Robert Schiffer for Sullivan and Cromwell for Goldman Sachs. Could I reserve one minute for rebuttal?  Okay. Thank you. This is a paradigmatic Rule 23-F petition. It raises important and recurring issues of class action law in the employment context in this circuit that this court's guidance is needed on. These issues, we believe, are likely to evade this court's review. The first issue, which the Second Circuit has never addressed- Why is it likely to evade our review? Well, because, first of all, there's going to be pressure to settle. That's been recognized in other 23-F petitions. Second- But the rule, as I've always understood it, is a death knell rule. Is this a case where Goldman Sachs is just going to be brought to its knees by how many plaintiffs are there here? More than 2,000. More than 2,000. The amount of money at stake is going to push you that you'll have to settle this case and it'll go away? Well, Your Honor, the Hevesi case rejected the death knell notion, but more importantly, if we actually go to trial in this case, we would have literally hundreds of trials that would go on for years. And so the issue that really the court needs to address, which it has never addressed, in fact, the court's never taken a 23-F employment class action case, is what does it mean to be a common mode of exercising discretion? Key words in the Walmart case that have been reflected in lower court decisions in hundreds of cases, but never by this court. And in the lower court's decision, the court relied upon a case from the Seventh Circuit or a case from the Fourth Circuit, but not a case from this circuit. In certifying what we believe to be an unprecedented class of more than 2,000 professionals who earned north of hundreds of thousands of dollars, some into the millions, across many businesses at Goldman Sachs. Now the second reason why the court should grant certification, we believe here, is that the district court committed clear error in rejecting Magistrate Judge Francis's recommendation that there were predominance issues in this case that related to causation, and what Judge Francis held correctly, we believe, was that there were countless individual factors that would affect how this would all be played out at the end. And Judge Torres seemed to think that under black letter title seven law, all you would have, the only thing that a defendant could do was to show that there was a business necessity for the challenge practices, and the challenge practices here are 360 reviews, which folks have said are really good practices, which should be encouraged, another reason for this court to hear the case. But under black letter title seven law, reflected in the statute, in Walmart itself, in the Chin case from this court, the defendant, once there is, let's assume you get passed and the court finds that there has been a pattern, there's a business process that has an adverse effect on women. There's no question, as Judge Francis correctly held, that Goldman Sachs would have the right to litigate on a class member by class member basis, whether we had it engaged in any sort of discrimination as to one particular employee versus- Just to follow up on Judge Lynch's question, do you maintain, though, that the certification order will effectively end the litigation as far as Goldman Sachs is concerned? Well, obviously, Goldman Sachs can litigate it, but the reason why there's a flexible 23-S- The answer is no, you don't take that position. Well, Goldman Sachs will obviously face the pressure to settle a case, which is something that the Second Circuit has recognized as a reason for granting 23-F review in the Hevesi case and in other cases. But that's always the case, right? Well, then you would never have 23-F review if- Well, Sumitomo developed the death knell standard, and Hevesi may have loosened it, but still, I've not been persuaded by what you've said, that the issues you're concerned about would evade review or that the district courts are in dire need of guidance on a novel legal issue. Well, there's been no ruling by the Second Circuit on a 23-F petition. There's been no decision by the Second Circuit interpreting Walmart in the context of a class action such as this. Not one case. But in addition, as I pointed out earlier, clearly, Magistrate Francis's decision was correct. And the lower court misapplied the Teamsters' burden shifting process and basically held that we did not have the right to challenge on a class member by class member basis why the employment decisions were made. And that's clearly wrong under black letter law. And that reason in and of itself is a reason for this court to- So won't that come up actually at the damages phase? I mean, we're really talking about a liability phase right now where you're looking at statistical evidence, which really only has meaning in the context of the whole workforce. Respectfully, no. As Judge Francis made clear, that's a liability issue. Causation is a liability issue. So if the question is, for example, in a particular employee's case, how was the 360 review applied? Did that employee, was that the basis for the decision? Did Goldman Sachs, for example, these are hundreds of business units, and was there a budget in one business unit versus another? And that's why the employee got the compensation that the employee received. Those are issues under black letter, Title VII law that Goldman Sachs can litigate at the liability stage. And so we're literally looking right now at hundreds of jury trials, because this is a damages case under B3, and they're seeking compensatory and punitive damages. Okay, you've reserved a minute. We'll hear from Ms. Shaver. May it please the court, my name is Ann Shaver, I represent the plaintiffs and the class. We ask that the petition for discretionary review be denied for two reasons. The first is that this case does not present a compelling issue of law, which the Second Circuit needs to resolve right now. And the second is that this case will not terminate the litigation and escape review. Goldman says there are two compelling issues of law here, but both are actually very well settled. The first is whether Goldman's right to present affirmative defenses as to each class member's entitlement to relief precludes predominance. And the second issue is whether commonality can be established in a disparate impact case, challenging discretionary review matters. What this case presents is Goldman's disagreement with the district court's application of well settled law to the facts here. And this court has said in Hevesi and in Sumitomo that that is not a proper basis for 23F review. Turning to the first issue of predominance and affirmative defenses. No one, not plaintiffs and not the district court, disputes that Goldman will have a right to present affirmative defenses to each class member's entitlement to relief. But there is a well settled Title VII framework for when and how that happens. And that is only if and after plaintiffs prevail on their burden of a prima facie case of liability for disparate treatment or disparate impact. And the district court followed that well established framework here and found that the individual issues did not predominate over the common issues of liability. And both the Hevesi case and the Sumitomo case- Can you help me understand how that works? How do you establish disparate treatment or disparate impact without showing causation? The impact and the treatment both seem to raise a question of whether something happened to somebody in particular as a result of this practice, doesn't it? Yes, your honor. So in a disparate impact case, it's slightly different for each theory of liability. So in a disparate impact case, the stage one is whether plaintiffs have identified a employment practice, whether that employment practice causes a disparate impact on a protected group. And as a district court found here, that all rises and falls on common evidence, typically statistical evidence. Then the burden shifts to Goldman Sachs, still in stage one, to show that that challenged business practice is a business necessity. If they do that, it shifts back to plaintiffs to prove that there is a less discriminatory alternative business practice available. If plaintiffs prevail at that stage, then the case moves on to stage two, in which class members are entitled to a presumption of discrimination. But the defendant has the right to rebut that presumption with evidence that a employment decision was made for a lawful reason as to each class member. So that is the stage two. At that stage, as Mr. Gifford says, there are 2,000 approximately many trials on that issue, one as to each member of the class? Assuming they think that they can establish it as to, they have a right to try. That's unlikely, Your Honor, because as a matter, just as a practical matter, when you're talking about a disparate impact case, what each class member has to show, and this was in the Robinson case, for example, has a great discussion of this, is that they were subject to the challenge practice. And then there's a limited number of affirmative defenses that the defendant can bring, such as they were on leave during that period of time, they signed a waiver releasing their claims. And there are a number of defenses that can be litigated on a common basis. And so when this type of issue has played out in practice, when these cases have actually been tried in this circuit, what's happened is sort of a funneling through written questionnaires and other means, a funneling of the people who are actually going to come forward and seek individual monetary damages. And then those are done in what is called the phase two teamsters hearings. And that's exactly what happened in the United States v. City of New York, in the Veles v. Novartis case. Because, wait, you said it's a funneling as to who's going to come forward and ask for damages? You think that after you win on disparate impact, that 1,000 out of 2,000 people is going to say, that's fine, we're happy with that. We're not going to ask for any money? Well, your honor, first of all, there's a slight difference as to the promotion claims here and the compensation claims here. So for the promotion claims here, it's going to be a much smaller number of people because there's a limited number of promotions that were actually available. So what the court did in United States v. City of New York was very instructive here in terms of using a streamlined written questionnaire process to identify who those class members were who were actually going to be entitled to the promotion. So that's one thing. For the economic damages, your honor, there are a number of management tools at the court's disposal to streamline those individualized hearings as to damages. Which the district court here noted in her discussion of superiority. She said, look, I'm weighing the common issues of liability. I'm weighing them against the individualized issues of damages here. I'm finding that it makes sense for the class to proceed as a whole on these common issues of liability. But I retain the ability to address individualized damages issues by certifying subclasses for certain types of damages or by decertifying at the damages stage. I think I understand. Okay, thank you. Mr. Giffrey, you have a minute. Your honor, plaintiff's counsel just conceded that the district court got it wrong. And I would urge the court to look at A44. Where? You tell me where she said that, because I missed it. Well, but she conceded that at once there's, if you can establish a disparate impact, we would have the ability to, beyond establishing business necessity, but on a class member by class member basis, challenge liability, challenge causation, exactly your point, Judge Lynch. And if you look at Judge Franklin. Frank didn't say that. She may be wrong, but I thought she said that there were a limited number of defenses, such as waiver, that you would be able to establish. Now, maybe that's wrong, but I didn't hear her say causation was one of the things that could be fought. Okay, well, but I think the bottom line here is where the decision below in rejecting the recommendation of Judge Francis. And by the way, we never had oral argument below in the district court. She said, Judge Torres said, it was fundamental error in Judge Francis's recommendation on the question of predominance. And that was the question of causation and liability, which was the linchpin of Judge Francis's decision below. And so, the way the district court gets around predominance is the district court presumes all we can do is contest business necessity, which is wrong black letter law. And in fact, it was rejected by the Second Circuit in Chin, by the Supreme Court in Walmart, and it's contrary to the proper functioning of the Teamster's standards. So we're now looking at- But if the judge doesn't let you causation, doesn't that mean that pretty soon you lose and then you get to appeal and say this whole thing was a travesty? I don't believe that's correct, Your Honor. I'm just not sure I'm understanding. Are there going to be 2,000 mini-trials, and therefore this is cumbersome, and we need to review the class action determination? Or is the problem really that the judge made an error of law in thinking that what she's going to do is not have 2,000 mini-trials? Do you see the difference? I mean, which- I think, though, Your Honor, there will certainly be many, many mini-trials, even under the judge's view, over damages, right? And these are highly compensated people, very complicated. Under 54B, these cases would never come here for years, because she'd have to give us 54B on the first one. So we could be stuck in the district court for five years. There could be massive amount of judicial resources spent on this. And Judge Francis's decision was correct as a matter of law, and we're now litigating a major employment class action in the southern district that's premised on a clear misapplication of Title VII law. I can't think of a more clear instance where this court should exercise its flexible discretion under Rule 23F and hear the case. Particularly when there are other issues like, what is a common mode of exercising discretion? Your job- First of all, you're asking for is to have the case heard, and the merits panel will decide who's right about those underlying- Absolutely correct, because we're in a situation here now where we're looking at literally hundreds of trials and lots more litigation when, in fact, the decision below is premised on a clear error of law. Thank you very much. We'll take the matter under advisement.